UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIKRAE E. PRESTON, | CASE NO. 2:24-cv-01589-LK |
| Plaintiff, | ORDER ON MOTION TO DISMISS |
| v. | AND ALTERNATIVE MOTION TO CERTIFY QUESTION TO THE |
| SB&C, LTD aka SKAGIT BONDED COLLECTOR, L.L.C., | WASHINGTON STATE SUPREME COURT |
| Defendant. | |

This matter comes before the Court on Defendant SB&C Ltd.'s Motion to Dismiss and Alternative Motion to Certify Question to the Washington State Supreme Court. Dkt. No. 13. For the reasons explained below, the Court grants in part and defers in part SB&C's motion to dismiss and grants the alternative request for certification.[1]

---

[1] Because this matter can be decided based on the written submissions, the Court denies the parties' requests for oral argument. Dkt. No. 13 at 1; Dkt. No. 18 at 1.

ORDER ON MOTION TO DISMISS AND ALTERNATIVE MOTION TO CERTIFY QUESTION TO THE WASHINGTON STATE SUPREME COURT - 1

# I.  BACKGROUND

**A.  Factual Background**

Plaintiff Mikrae Preston is an individual residing in Skagit County. Dkt. No. 1-1 at 6. In 2017, she sought medical care at Skagit Valley Hospital. The hospital charged her for those services. *Id.* at 6. Preston alleges that the hospital should have (but did not) determine whether she was eligible for financial assistance under Washington's Charity Care Act (Wash. Rev. Code § 70.170 *et seq.*) before charging her and attempting to collect the amount owed. Dkt. No. 1-1 at 6–7. At the time she received care from Skagit Valley Hospital, Preston's gross household income was less than 500% of the federal poverty level. *Id.* at 7.

According to Preston, the Charity Care Act "requires that hospitals provide financial assistance to low-income persons to help with their out-of-pocket medical costs." *Id.* at 3. The Act requires hospitals to determine Charity Care eligibility before attempting to collect on medical bills, *id.* at 4 (citing Wash. Rev. Code § 70.170.060(10)(a) and (c)), and the Washington Administrative Code for Charity Care requires hospitals to determine eligibility at "the time of admission or as soon as possible following the initiation of services," *id.* (citing Wash. Admin. Code § 246-453-020(1)(b)). A patient must be notified if they do not qualify for Charity Care and may appeal that denial. *Id.* (citing Wash. Admin. Code § 246-453-020(9)).

As noted above, Preston alleges that Skagit Valley Hospital did not screen her for Charity Care eligibility before charging her for the medical services provided. The hospital assigned its claim against Preston to SB&C—a debt collection agency—in February 2018, and in March 2022, SB&C filed a lawsuit to collect on the claim in Skagit Valley District Court. *Id* at 7. SB&C's complaint did not include any disclosures about Washington's Charity Care program, including those that Preston alleges are required by law. *Id.* (citing Wash. Rev. Code § 19.16.260(2)). In the state collection action, SB&C moved for judgment on the pleadings, which was granted. *Id.* at 7–

8. The judgment awarded SB&C $3,522 in principal, $1,760.73 in interest, and $781.00 in costs and fees. *Id.* at 7–8.

Preston alleges that she only learned about her potential Charity Care eligibility for the first time at the hearing on SB&C's motion for judgment on the pleadings; a few months later in summer 2023, she applied for Charity Care and was approved for a 30% reduction in her hospital debt. *Id.* at 8. But SB&C informed Preston that because the Skagit Regional Health Financial Assistance Policy stated that "accounts for which a court has awarded a judgment are not eligible for financial assistance," it would not honor that reduction and expected Preston to pay the full amount owed pursuant to the judgment. *Id.*

**B.    Class Action Allegations**

Preston filed a class action complaint in Skagit County Superior Court, naming SB&C as the only defendant. Dkt. No. 1-1. She asserts violations of Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.010 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq. Id.* at 11–17.

Preston seeks to represent two classes (and two subclasses) of similarly situated plaintiffs:

- <u>Failure to Give Notice Class</u>: All individuals Defendant served with a complaint within the four years preceding the filing of this case to collect on a hospital debt Skagit Valley Hospital assigned to Defendant for collection.

- <u>Failure to Screen Class</u>: All individuals from whom Defendant attempted to collect a hospital debt allegedly owed to Skagit Valley Hospital, who had not been screened for Charity Care at the time Defendant attempted to collect from them.

- <u>Judgment Subclass</u>: All individuals in the Failure to Give Notice Class or the Failure to Screen Class against whom Defendant obtained a judgment within four years preceding the filing of this case.

- <u>FDCPA Subclass</u>: All individuals in the Failure to Give Notice Class and the Failure to Screen Class the Defendant attempted to collect from in the year preceding filing of this Complaint.

Dkt. No. 1-1 at 9.

ORDER ON MOTION TO DISMISS AND ALTERNATIVE MOTION TO CERTIFY QUESTION TO THE WASHINGTON STATE SUPREME COURT - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**C.    Relief Sought**

Preston seeks the following relief for her and the putative class members:

- <u>FDCPA claim</u>: actual damages (including emotional distress) and statutory damages, as well as costs and reasonable attorney's fees. Dkt. No. 1-1 at 14.

- <u>CPA claims</u>: actual and treble damages, litigation costs (including attorney's fees) as well as injunctions (1) vacating state court judgments obtained against Preston and class members, (2) requiring SB&C to reduce or eliminate debt owed based on Charity Care eligibility, (3) prohibiting SB&C from engaging in similar future misconduct, and (4) other equitable relief as the Court deems appropriate. *Id.* at 12–13, 15, 17.

**D.    Procedural History**

Preston filed this action on September 11, 2024 in Skagit County Superior Court. Dkt. No. 1-1. On October 2, 2024, SB&C removed the action to this Court. Dkt. No. 1. The removal petition asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the complaint asserts a federal claim (the FDCPA claim) and the Court has supplemental jurisdiction over the transactionally related state law claims. *Id.* at 1. SB&C then moved to dismiss the complaint. Dkt. No. 13 at 1.

## II.    DISCUSSION

SB&C moves to dismiss Preston's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim. Dkt. No. 13 at 1. Alternatively, SB&C asks the Court to stay this matter and certify the following question to the Washington State Supreme Court:

Do the requirements of RCW 7[0].170.060(8)(a) apply to a collection agency collecting on a hospital debt, as opposed to a hospital itself?

*Id.* Preston opposes the motion to dismiss and the alternative request to certify the above question. Dkt. No. 18.

**A.    Jurisdiction[2]**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A district court is thus "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Coleville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). In the removal context, the removing party bears the burden of establishing that removal is proper. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). In general, courts strictly construe the removal statute against removal jurisdiction, with any doubts as to the right of removal weighing in favor of remand. *Moore-Thomas*, 553 F.3d at 1244.

Here, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Preston's state court pleading asserts a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Dkt. No. 1-1 at 13–14. The Court has supplemental jurisdiction over Preston's state law CPA claims because they arise from the same underlying facts as the federal claim. *See* 28 U.S.C. § 1367(a); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims and the state and federal claims would normally be tried together." (quotation marks omitted)). Venue is proper in this district because it is the district and division embracing the place where the state court action was pending (Skagit County). *See* 28 U.S.C. §1441(a).

---

[2] The Court's *Rooker-Feldman* analysis, which also implicates subject-matter jurisdiction, is discussed separately below.

1    **B.    Preston's Claims Are Not Barred by the *Rooker-Feldman* Doctrine**

2          After reviewing the record and the briefing on the motion to dismiss, the Court requested

3    supplemental briefing on the threshold issue of "whether this action must be dismissed—in whole

4    or in part—based on the *Rooker-Feldman* doctrine," especially considering Preston's multiple

5    requests that the Court vacate class members' state judgments. Dkt. No. 23 at 1–2.

6          In Preston's supplemental briefing, she (1) argues that the doctrine does not apply to her

7    FDCPA claim, but "cannot find a clear answer regarding whether Rooker-Feldman bars the Court

8    from granting her the injunctive relief she seeks" as part of her CPA claim, and (2) asks that the

9    Court remand (instead of dismiss) the CPA claim if it finds that the claim is barred by the *Rooker-*

10   *Feldman* doctrine. Dkt. No. 24 at 4–9.

11         In its responsive supplemental brief, SB&C agrees with Preston that "the court has

12   jurisdiction over her FDCPA claim[.]" Dkt. No. 25 at 2. As for Preston's request that state court

13   judgments be vacated, SB&C argues that preclusion principles apply to bar that relief, not *Rooker-*

14   *Feldman*, so the Court has subject-matter jurisdiction over the entire action. *Id.*

15         1.   Legal Standard

16         Under the doctrine set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and

17   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (known as the *Rooker-*

18   *Feldman* doctrine), federal district courts lack subject matter jurisdiction over "cases brought by

19   state-court losers complaining of injuries caused by state-court judgments rendered before the

20   district court proceedings commenced and inviting district court review and rejection of those

21   judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In other

22   words, the doctrine precludes federal district courts from hearing direct or de facto appeals of state

23   court judgments. *Fowler v. Guerin*, 899 F.3d 1112, 1119 (9th Cir. 2018); *Cooper v. Ramos*, 704

24   F.3d 772, 777 (9th Cir. 2012) ("The doctrine bars a district court from exercising jurisdiction not

ORDER ON MOTION TO DISMISS AND ALTERNATIVE MOTION TO CERTIFY QUESTION TO THE
WASHINGTON STATE SUPREME COURT - 6

only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal."). "It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Cooper*, 704 F.3d at 778 (quoting *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003)).

The Supreme Court has emphasized that the "ground occupied by *Rooker-Feldman*" is "narrow." *See Exxon Mobil*, 544 U.S. at 284. The doctrine does not apply to plaintiffs bringing independent claims that are "similar or even identical to issues aired in state court" but "not the subject of a previous judgment by the state court." *Cooper*, 704 F.3d at 778. However, federal district courts may not exercise jurisdiction where the claims presented are "inextricably intertwined" with the state court's ruling. *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022) (quoting *Cooper*, 704 F.3d at 778). "Claims are inextricably intertwined if 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Id.* at 624–25 (quoting *Cooper*, 704 F.3d at 779). But the Ninth Circuit has emphasized that a district court should only reach the "inextricably intertwined" analysis if it first finds that the federal suit is a "de facto appeal" of the state court decision—if it is not, the analysis ends there. *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013).

In a recent decision, the Ninth Circuit once again emphasized the narrowness of the doctrine. *Miroth v. Cnty. of Trinity*, No. 23-15759, 2025 WL 1338067 (9th Cir. May 8, 2025). The decision emphasized that two elements must be met for a case to constitute a de facto appeal: plaintiffs (1) must be challenging an allegedly erroneous decision by a state court (as opposed to an allegedly illegal act or omission by an adverse party), *and* (2) must seek relief from the state court judgment. *Id.* at *11–12. If both elements are not met, the federal court action is not a de-

facto appeal and *Rooker-Feldman* does not apply (though as the court emphasized, preclusion principles still may).

2. The FDCPA Claim is Not Barred

First, the Court agrees with the parties that Preston's FDCPA claim does not raise *Rooker-Feldman* issues. It focuses on SB&C's alleged misconduct before and after the judgment—e.g., SB&C's failure to provide notice of Charity Care eligibility in initial communications and failure to apply the Charity Care discount to her debt—not on whether the state court judgment was correct. Dkt. No. 1-1 at 13–14. As Preston notes, none of those issues were presented to or decided by the state court. Dkt. No. 24 at 5. *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139–43 (9th Cir. 2004) (damages based on the alleged wrongful behavior of the defendants, as opposed to legal error by the state court, not barred). And because the claim seeks damages stemming from SB&C's alleged debt collection misconduct, not vacatur of the state court judgment, *Rooker-Feldman* does not bar it. Dkt. No. 1-1 at 14.

3. The CPA Claims Are Not Barred

The CPA claims are more complicated. They, like the FDCPA claim, target SB&C's alleged misconduct, not an error committed by the state court. Dkt. No. 1-1 at 11–17. But unlike the FDCPA claim, Preston's CPA claims directly ask the Court to undo a state court judgment, which "can implicate *Rooker-Feldman*." *Miroth*, 2025 WL 1338067, at *11. But, for the reasons explained below, the Court finds that this falls into the category of cases where a federal suit seeking to vacate a state court judgment is not a direct or de facto appeal of the state court's decision.

As noted above, the *Rooker-Feldman* doctrine does not automatically apply whenever a federal district court is asked to vacate a state court judgment (though it often does apply in those circumstances). Instead, the doctrine is triggered when a plaintiff asks the court to "review and

reject[]" a state court judgment. *Exxon Mobil*, 544 U.S. at 284; *Bell*, 709 F.3d at 897 ("even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff also alleges a legal error by the state court"). And as explained below, the Ninth Circuit has held that federal suits seeking to vacate state judgments based on unlitigated, extrinsic misconduct can proceed because they avoid challenging the merits of the state court's decision. Preston's CPA claims fall into this category.

In *Kougasian*, the Ninth Circuit addressed whether *Rooker-Feldman* barred a federal lawsuit seeking to set aside a state court judgment based on allegations of extrinsic fraud and other alleged wrongful acts not litigated in state court. 359 F.3d at 1139. Kougasian's state court cases involved wrongful death claims related to her husband's death. *Id.* at 1138. The state courts granted summary judgment against her, and those judgments were affirmed on appeal. *Id.* She then filed a federal lawsuit alleging that defendants had obtained the state court judgments through extrinsic fraud (by submitting false declarations). *Id.* at 1139–40. She also sought to set aside the judgments based on alleged "other wrongful acts." *Id.* at 1140. The Ninth Circuit held that the *Rooker-Feldman* doctrine did not apply because Kougasian was not challenging the correctness of the state court judgments. *Id.* at 1142. And because she "ha[d] asserted no legal error by the state court," she was "therefore not bringing a de facto appeal under *Rooker-Feldman*." *Id.* at 1143.

Preston rightly points out that *Kougasian* involved an allegation of extrinsic fraud on the state court, which is not exactly at issue here. Dkt. No. 24 at 6–7. But the panel also extended its reasoning to "other wrongful acts" that tainted the state court judgment, even if they were not as severe as fraud on the state court. It explained that "even if Kougasian were not seeking to set aside the judgments because of extrinsic fraud (or even if the federal court concludes that there was no extrinsic fraud), *Rooker-Feldman* still does not bar these four causes of action" because "Kougasian does not, in these causes of action, allege legal errors by the state courts; rather, she

alleges wrongful acts by the defendants." *Kougasian*, 359 F.3d at 1141–42.[3] That is close enough to the situation here. Preston seeks vacatur as a remedy for wrongful acts not litigated in the state court—she is not challenging the state court's legal or factual conclusions, but instead challenges SB&C's alleged wrongful conduct that might have tainted the process (i.e., SB&C's alleged failure to inform Preston of her Charity Care eligibility in time to apply and receive a decision before the state court issued its judgment).

Another case, *Bell v. City of Boise*, is also instructive. There, the district court found that because plaintiffs' requested relief was "designed to compensate [them] for the injuries occasioned by the state-court judgments," their claims "would serve as an end-run around the state court appellate process," and "serve as a de facto appeal from the state court." 709 F.3d at 895. The Ninth Circuit disagreed and reversed. The panel reasoned that "[a]lthough Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself," and "[w]ithout a direct challenge to a state court's factual or legal conclusion, Plaintiffs' suit is not a forbidden de facto appeal, and *Rooker–Feldman* is inapplicable." *Id.*; *see also Brown v. Duringer L. Grp. PLC*, 86 F.4th 1251, 1253–54 (9th Cir. 2023) (where plaintiff was challenging alleged misconduct that the state court had "no opportunity to assess," *Rooker-Feldman* did not apply because plaintiff was not "inviting district court review and rejection of that judgment"), *cert. denied*, 144 S. Ct. 1351 (2024). Unlike here, the plaintiffs in *Bell* did not expressly seek relief from the state court judgment. *Bell*, 709 F.3d at 897. But *Bell*'s reasoning still

---

[3] The Ninth Circuit recently clarified that *Kougasian*'s reasoning extends beyond cases where the pleading specifically alleges extrinsic fraud. The court noted that allegations do not need to be "couched in extrinsic fraud terms" to avoid *Rooker-Feldman*; what matters is whether the allegations are asserting an error by the state court (which might implicate *Rooker-Feldman*) or independent wrongdoing by an adverse party (to which *Rooker-Feldman* does not apply). *Miroth v. Cnty. of Trinity*, 2025 WL 1338067, at *10.

holds; seeking relief from a state court judgment does not automatically turn a federal lawsuit into a barred de facto appeal. *Id.* (to implicate *Rooker-Feldman*, "a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief." (quoting *Kougasian*, 359 F.3d at 1140)).

In sum, under these circumstances, Preston's request that a state court judgment be vacated does not turn this case into the kind of de facto appeal that *Rooker-Feldman* bars. The remedy of vacatur, as in *Kougasian*, is permissible because it is tied to SB&C's purported misconduct, not the correctness of the state court's decision.[4] And for the same reasons that Preston's request for an injunction vacating state court judgments is not barred by *Rooker-Feldman*, the rest of the injunctive relief that she seeks is not barred either.

### 4. Preston is Ordered to Show Cause Why a Portion of Her Request for Relief Should Not be Stricken

One issue remains. In Preston's request for relief, she asks the Court to:

> vacate all judgments against class members where [SB&C] has violated RCW 19.16.250 and .260, to vacate all judgments obtained against class members where [SB&C] has failed to advise[] them in its initial compliant of their right to apply for Charity Care, and *to vacate all judgments obtained against class members*.

Dkt. No. 1-1 at 17–19 (emphasis added). To the extent the request that the Court vacate all judgments obtained against class members is tied to the violations described in the preceding requests, it appears to be redundant. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). To the extent it is not so tied, this request is untethered to any cause of action or wrongdoing by SB&C, rendering it immaterial and/or impertinent. *Id.* (immaterial matter has no

---

[4] Importantly, just because Preston's requested vacatur of state court judgments does not implicate *Rooker-Feldman* under these specific circumstances does not mean that this relief is not otherwise barred or heavily disfavored. For example, the Full Faith and Credit Clause and related statutory provisions require federal courts to give preclusive effect to state court judgments, Const. Art. IV § 1; 28 U.S.C. § 1738, and principles of federalism and comity further warn against interfering with state judicial proceedings, *see Juidice v. Vail*, 430 U.S. 327, 334 (1977). *See also Miroth*, 2025 WL 1338067, at *11 (a federal suit "raising matters that were raised or could have been raised in state court . . . is the domain of preclusion doctrines").

essential or important relationship to the plaintiff's underlying claim for relief, while impertinent matter does not pertain directly to the harm being alleged). For example, as a debt collection agency, SB&C could have multiple judgments against class members, only one of which relates to the subject matter of this action (hospital debt). Vacatur of all judgments against class members could therefore sweep far more broadly than the harm alleged in this case. Preston is accordingly ordered to show cause why this portion of her request for relief should not be stricken under Federal Rule of Civil Procedure 12(f).

**C.    The Court Grants in Part and Defers in Part SB&C's Motion to Dismiss and Grants its Request for Certification**

Preston's claims are based on the same two theories of wrongdoing—that SB&C improperly commenced collection efforts (1) before ensuring that Preston was screened for Charity Care eligibility and (2) without providing adequate notice of potential Charity Care eligibility. Dkt. No. 1-1 at 5.

1.   Preston's Failure-to-Screen Theory is Not Actionable

At a high level, Preston argues that because Skagit Valley Hospital did not comply with its Charity Care screening requirements before assigning the debt to SB&C, the assignment was void. Dkt. No. 1-1 at 5, 7; *see also* Dkt. No. 18 at 8. And because the assignment was void, Preston argues that SB&C's attempt to collect on that debt (which was not properly assigned to it) violated state consumer protection and federal fair debt collection practices laws. Dkt. No. 18 at 8–9. SB&C responds that "[n]othing in the applicable regulations and statutes suggests that the underlying obligation is waived or otherwise uncollectable if a hospital fails to comply with its charity care obligations." Dkt. No. 13 at 15.

In support of her theory, Preston relies on Sections 70.170.060(10)(a) and (c) of the Charity Care Act, which require that:

(10) Each hospital shall make every reasonable effort to determine:

> (a) The existence or nonexistence of private or public sponsorship which might cover in full or part the charges for care rendered by the hospital to a patient; . . . and

> (c) The eligibility of the patient for charity care as defined in this chapter and in accordance with hospital policy. <u>An initial determination of sponsorship status shall precede collection efforts directed at the patient</u>.

Wash. Rev. Code § 70.170.060(10)(a) and (c) (emphasis added).

The statutory language is clear that *hospitals* cannot begin collection efforts before determining a patient's Charity Care eligibility. But, as noted, Preston's theory goes one step further. She argues that a hospital cannot legally assign medical debt to a collection agency—and that agency cannot try to collect that debt—before the hospital screens for Charity Care eligibility.

Not so. Nothing in the statutory text conditions the assignment or collection of hospital debt by a collection agency on a hospital's compliance with Charity Care screening requirements, and Preston fails to cite any case suggesting otherwise. The most relevant statutory provision is Section 70.54.470, which imposes a mandatory 120-day waiting period before a hospital can sell or assign debt to a collection agency. Wash. Rev. Code § 70.54.470. But that subsection does not tie the sale or assignment of debt to Charity Care compliance, and Preston does not allege that Skagit Valley Hospital's assignment of her debt to SB&C violated the 120-day waiting period.

This does not create a "loophole" whereby patient protections cease upon assignment, as Preston argues. Dkt. No. 18 at 2. Washington's Collection Agency Act (which regulates collection agencies like SB&C) also regulates how medical debt is collected. For example, Section 19.16.250 includes certain notice and disclosure requirements and mandates that collection cease during the pendency of a Charity Care application or appeal. Wash. Rev. Code § 19.16.250. But again, the Act does not tie the ability to collect hospital debt to the originating hospital's compliance with its Charity Care screening obligations. *See generally* Wash. Rev. Code Ch. 19.16.

1    In sum, nothing in the statutory text purports to void the assignment of medical debt to a

2    debt collection agency in situations where the originating hospital has not complied with its

3    Charity Care screening obligations. And in the absence of clear statutory text or state court

4    precedent recognizing Preston's legal theory, "considerations of comity and federalism counsel

5    that [federal courts] proceed gingerly when venturing into uncharted waters of state substantive

6    law." *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1251 (11th Cir. 2013); *see also Neyens v. Am. Fam.*

7    *Mut. Ins. Co.*, No. C12-1038JLR, 2012 WL 5499870, at *2 (W.D. Wash. Nov. 13, 2012) ("Federal

8    courts predicting state law should hesitate to create causes of action which heretofore have not

9    been recognized in the state courts.").

10    2.    Preston Fails to Establish that SB&C Violated Section 19.16.250(29)'s Notice
           Provision

11    Preston's second overarching theory is based on SB&C's alleged failure to give her

12    adequate notice of her Charity Care rights and eligibility. She alleges that SB&C violated several

13    statutory provisions, including for these purposes Section 19.16.250(29) of Washington's

14    Collection Agency Act. Dkt. No. 1-1 at 16; Dkt. No. 18 at 18.

15    That section requires that a debt collection agency's first written communication to a debtor

16    include "a notice that the debtor may be eligible for Charity Care from the hospital, together with

17    the contact information for the hospital." Wash. Rev. Code § 19.16.250(29). In its motion to

18    dismiss, SB&C argues that it sent the "first written notice" to Preston in 2018, over a year before

19    this subsection was added by the legislature and went into effect, so this requirement does not

20    apply to it. Dkt. No. 13 at 14. Preston essentially argues that the Court should disregard this

21    argument because her complaint does not allege when SB&C sent its first written notice—instead,

22    this is a question of fact that should be decided later. Dkt. No. 18 at 18. SB&C responds that "[t]his

23

24

1    appears to be a tactical omission by plaintiff" to get around the fact that SB&C's notice was sent

2    before this requirement went into effect. Dkt. No. 20 at 11.[5]

3         Although it is generally true that SB&C cannot insert its own facts at the motion to dismiss

4    stage, and that Preston's well-pleaded allegations must be accepted as true, the issue here is that

5    there are no allegations for the Court to accept. In other words, to sufficiently plead that SB&C

6    did not include the required Charity Care statement in its "first written notice," Preston must

7    provide sufficient supporting factual allegations regarding when she received that notice and why

8    the notice was insufficient under Section 19.16.250(29). And although Preston suggests that it is

9    sufficient to assert in a conclusory manner that "SB&C's first written notice failed to contain the

10   required disclosures," Dkt. No. 18 at 18, such an allegation is not actually contained in her

11   complaint. The complaint does not contain the words "first written notice" and mentions Section

12   19.16.250(29) only once, alleging that "Defendant routinely fails to give to persons who allegedly

13   owed a debt to Skagit Valley Hospital the notice required by RCW 19.16.250(29)(a) regarding the

14   availability of Charity Care." Dkt. No. 1-1 at 16.

15        For these reasons, Preston has not stated a claim that SB&C violated Washington's

16   Collection Agency Act's Charity Care notice requirement.

17        3.   Preston Fails to Establish that SB&C is a "Debt Buyer" Subject to Section
              19.16.260's Disclosure Requirements

18        The parties argue over whether SB&C is a "debt buyer," but seem to agree that if it is, it is

19   subject to Section 19.16.260(2)'s "exacting" disclosure requirements. Dkt. No. 20 at 10–11; Dkt.

20   No. 18 at 17–18.

21        A "debt buyer" is defined as "any person or entity that is engaged in the business of

22

23   _____
     [5] SB&C should have filed a praecipe under Local Civil Rule 7(m), but the Court will consider the amended reply brief
24   because SB&C filed it on the same day as the original reply brief. Dkt. Nos. 19, 20. However, future violations of the
     applicable rules may result in sanctions.

ORDER ON MOTION TO DISMISS AND ALTERNATIVE MOTION TO CERTIFY QUESTION TO THE
WASHINGTON STATE SUPREME COURT - 15

1    purchasing delinquent or charged off claims for collection purposes, whether it collects the claims

2    itself or hires a third party for collection or an attorney for litigation in order to collect such claims."

3    Wash. Rev. Code § 19.16.100(7). Preston argues that SB&C is a debt buyer because it paid

4    "valuable consideration" to become the holder of the claim to her medical debt. Dkt. No. 18 at 18.

5    SB&C responds that Preston's reliance on the Black's Law Dictionary definition of the word

6    "purchaser" collapses the real-world distinction between assigned debt (which is not subject to

7    Section 19.16.260(2)) and purchased debt. Dkt. No. 20 at 10–11.

8        The definitions in Section 19.16.100 distinguish collection agencies from debt buyers. The

9    collection agency definition broadly includes entities that "collect[] or attempt[] to collect claims

10   owed. . . [to] another person," but a debt buyer is limited to entities that "purchas[e] delinquent or

11   charged off claims for collection purposes." Wash. Rev. Code § 19.16.100(4), (7). As SB&C notes,

12   debt buyers can qualify as collection agencies, but not all collection agencies are debt buyers. Dkt.

13   No. 20 at 10–11; *see also Gray v. Suttell & Assocs.*, 334 P.3d 14, 18 (Wash. 2014) ("[D]ebt buyers

14   fall within [the definition of 'collection agency'] when they solicit claims for collection."). Preston

15   appears to argue that being assigned debt for collection purposes suffices to make the assignee a

16   "purchaser," Dkt. No. 18 at 17–18, but that is too reductive. The relevant statutory provisions—

17   and Preston's own definition of "purchaser" as someone who "obtains property," *id.*—collectively

18   establish that a debt buyer must have actual ownership of the debt. *See, e.g.*, Wash. Rev. Code §

19   19.16.260(b)(vii) (debt buyer must have documentation proving ownership of the debt).

20       Not every assignment transfers full ownership of the debt. For example, a hospital may

21   hire a collection agency to collect medical debt on its behalf. In this example, the collection agency

22   would not be a "debt buyer" because it would not have full ownership over the debt—for example,

23   it could not sell the debt to a third-party, and it would only have a limited right to collect the debt

24   on the hospital's behalf. Alternatively, a collection agency might buy a patient's medical debt from

1    the hospital, in which case the agency would become the legal owner of the debt and would collect

2    the debt for its own account. In both cases there is an assignment, but the collection agency only

3    owns the debt in the second scenario.

4         Ultimately, Preston's complaint does not allege that SB&C owns her debt; it only alleges

5    that Skagit Valley Hospital "assigned" the debt to SB&C. *See, e.g.*, Dkt. No. 1-1 at 7. To bridge

6    this gap, Preston's briefing highlights allegations that SB&C made in its state court complaint—

7    i.e., that Preston's account was "assigned" to SB&C and it is "now the holder thereof." *See* Dkt.

8    No. 18 at 18 (citing Dkt. No. 14-1).[6] But that does not sufficiently establish that SB&C owns the

9    debt (versus holding a limited right to collect the debt on Skagit Valley Hospital's behalf), and in

10   any case, Preston did not incorporate those allegations into her own complaint. Indeed, the

11   complaint affirmatively alleges that SB&C's complaint "alleged that [Preston] was indebted to

12   *Skagit Valley Hospital*[.]" Dkt. No. 1-1 at 7 (emphasis added). And oddly, despite initially alleging

13   in conclusory fashion that SB&C is a debt buyer, *id.* at 6, the complaint goes on to identify as a

14   question of fact common to the class "whether [SB&C] is a debt buyer," *id.* at 10. "Rule 8 . . . does

15   not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Preston's allegation that SB&C is a debt buyer is

17   a legal conclusion that is not entitled to the assumption of truth, and the remainder of the complaint

18   does not contain well-pleaded allegations plausibly establishing that SB&C meets the criteria to

19   be a debt buyer. *Id.* at 679–80.

20        Thus, because Preston has failed to adequately allege that SB&C is a debt buyer, her theory

21   that SB&C violated Section 19.16.260(2)'s disclosure requirements fails.

22

23   _____

[6] By failing to cite a specific page of this 9-page document, Preston violated Local Civil Rule 10(e)(6), which requires parties to cite "to the docket number *and the page number*" of docket entries. (Emphasis added.) Notably, the "Authorization for Legal Action" included in that document states that SB&C is authorized to take legal action "in the collection of this account *on [Skagit Valley Hospital's] behalf*." Dkt. No. 14-1 at 7 (emphasis added).

24

ORDER ON MOTION TO DISMISS AND ALTERNATIVE MOTION TO CERTIFY QUESTION TO THE
WASHINGTON STATE SUPREME COURT - 17

4. <u>The Court Will Certify SB&C's Question Regarding the Scope of Section 70.170.060(8)(a)'s Notice Provision</u>

Finally, Preston alleges that SB&C violated the Charity Care statute's notice requirements as set forth in Section 70.170.060(8)(a). Dkt. No. 1-1 at 5, 13.

Section 70.170.060(8)(a) requires that

"[a]ll hospital billing statements and other written communications concerning billing or collection of a hospital bill by a hospital must include the following or a substantially similar statement prominently displayed on the first page of the statement in both English and the second most spoken language in the hospital's service area:

> You may qualify for free care or a discount on your hospital bill, whether or not you have insurance. Please contact our financial assistance office at [website] and [phone number].

Wash. Rev. Code § 70.170.060(8)(a).

SB&C argues that this provision only applies to hospitals, not to debt collection agencies. Dkt. No. 13 at 4–6. Preston responds that SB&C's reading of Section 70.170.060(8)(a) is "overly narrow" and "would circumvent the primary purpose of the Charity Care Act: to ensure that individuals know of the availability of Charity Care, and if eligible, obtain financial assistance for their hospital debts." Dkt. No. 18 at 10.

On this point, the parties' main disagreement is over whether a recent state court of appeals decision considering this issue was correctly decided: *Fairway Collections, LLC v. Turner*, 540 P.3d 805, 816 (Wash. Ct. App. 2023). That case considered the scope of Section 70.170.060(8)(a) and concluded that Fairway, a debt collection agency, was "responsible for including a notice about Charity Care when seeking to collect on a hospital bill under the plain language of RCW 70.170.060." *Id.* It reasoned that a 2018 amendment to the statute "create[d] broader obligations relating to medical debt, beyond the hospital." *Id. Fairway* was not appealed further, so the Washington Supreme Court did not have the chance to rule on the issue.

ORDER ON MOTION TO DISMISS AND ALTERNATIVE MOTION TO CERTIFY QUESTION TO THE WASHINGTON STATE SUPREME COURT - 18

SB&C argues that *Fairway* was wrongly decided because its holding cannot be reconciled with Section 70.170.060(8)(a)'s plain text. Dkt. No. 13 at 7. Specifically, it argues that the text limits Section 70.170.060(8)(a)'s notice requirement to "[a]ll hospital billing statements and other written communications concerning billing or collection of a hospital bill by a hospital," and the *Fairway* decision reads the "by a hospital" qualifier out of the statute. *Id.* at 5, 7.

"[W]hen interpreting state law, federal courts are bound by decisions of the state's highest court." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (quotation omitted). If there is no controlling decision of the state's highest court, a federal court must "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* In the absence of convincing evidence that the state supreme court would decide differently, a federal court must follow the decisions of the state's intermediate appellate courts. *Id.*

SB&C's argument that *Fairway* was wrongly decided has some appeal. First, the "by a hospital" language does suggest a legislative intent to limit the statute's notice obligations to hospitals. And as SB&C points out, the statutorily required notice informing the patient to "contact our financial assistance office" further suggests that the requirement is aimed at hospitals and not collection agencies, because hospitals generally have financial assistance offices whereas debt collection agencies may not (and are not required to). Dkt. No. 13 at 6.

Moreover, as noted above, debt collection agencies are governed by a different state statute, Washington's Collection Agency Act, Wash. Rev. Code § 19.16 *et seq.* That statute includes a different Charity Care notice obligation: in the debt collection agency's "first written notice to the debtor," it must include "a notice that the debtor may be eligible for charity care from the hospital, together with the contact information for the hospital." Wash. Rev. Code § 19.16.250(29). The requirement that debt collection agencies include a Charity Care eligibility notice in the "first

written notice to the debtor" is hard to reconcile with Section 70.170.060(8)(a)'s requirement that "[a]ll hospital billing statements and other written communications concerning billing or collection of a hospital bill" include the required Charity Care notice. *See also* Dkt. No. 13 at 7 n.4.

Given the Court's reservations about *Fairway*'s interpretation of Section 70.170.060(8)(a)—and because that case was not appealed further—the Court will defer ruling on this issue and certify the question to the Washington State Supreme Court. The Ninth Circuit has certified questions when it was unable to predict how the state supreme court would decide state law issues of broad application, including when the panel had concerns with a state appellate court's reasoning. *See Munson v. Del Taco, Inc*., 522 F.3d 997, 1002 (9th Cir. 2008) (certifying a question where the court was "in doubt about whether the California Supreme Court would follow" an earlier state intermediate appellate court decision), *certified question answered*, 208 P.3d 623 (Cal. 2009); *Klein v. United States*, 537 F.3d 1027, 1032 (9th Cir. 2008) (similar, noting "grave concerns" that state appellate court did not apply state law correctly), *certified question answered*, 235 P.3d 42 (Cal. 2010). The Court is in a similar position here.

The Court thus **CERTIFIES** the following question:

- Do the requirements of RCW 70.170.060(8)(a) apply to a collection agency collecting on a hospital debt, as opposed to a hospital itself?

This question of state law "has not been clearly determined"—*Fairway* is the only case of which this Court is aware addressing the question—and does not "involve a question determined by reference to the United States Constitution." Wash. R. App. P. 16.16(a). Moreover, given that *Fairway* has already seemingly birthed at least one class action complaint, the Court believes it has "important public policy ramifications" and is "of broad application," *U.S. Bank, N.A., Tr. for Holders of J.P. Morgan Mortg. Tr. 2007-S3 v. S. Highlands Cmty. Ass'n*, 999 F.3d 1185, 1187 (9th Cir. 2021). The Court does not intend its framing of the question to restrict the Washington

1    Supreme Court's discretion to reformulate it or consider any issues that it determines are relevant.

2    *Adamson v. Port of Bellingham*, 899 F.3d 1047, 1052 (9th Cir. 2018).[7]

3    **D.    Stay of Proceedings**

4            In its motion, SB&C asks the Court to stay proceedings pending resolution of the certified

5    question. Dkt. No. 13 at 1. Preston does not directly respond to this request in her opposition, *see*

6    *generally* Dkt. No. 18, but does complain that "[c]ertifying this question to the Washington

7    Supreme Court will only serve to delay disposition of this case," *id.* at 2.

8            "[T]he power to stay proceedings is incidental to the power inherent in every court to

9    control the disposition of the causes on its docket with economy of time and effort for itself, for

10   counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Court "may order

11   a stay of the action pursuant to its power to control its docket and calendar and to provide for a

12   just determination of the cases pending before it." *Leyva v. Certified Grocers of Cal., Ltd.*, 593

13   F.2d 857, 864 (9th Cir. 1979). In considering whether to grant a stay, courts consider several

14   factors, including "the possible damage which may result," "the hardship or inequity which a party

15   may suffer in being required to go forward," and "the orderly course of justice[.]" *CMAX, Inc. v.*

16   *Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

17           Here, the Court agrees with SB&C that a stay is warranted. First, the Court recently stayed

18   proceedings pursuant to the parties' stipulated motion, in which they averred that "it is necessary

19   for the Motion to Dismiss to be resolved in order to move forward in this matter." Dkt. No. 26 at

20   2; *see also* Dkt. No. 27. As explained above, the motion to dismiss cannot be resolved until the

21   Washington Supreme Court disposes of the certified question. Second, the Supreme Court's

22   resolution of the certified question may narrow Preston's liability theory; at a minimum, it is likely

23

24   ───────────────
[7] Because the Court is certifying SB&C's question, and the answer to that question may be dispositive, the Court
defers ruling on SB&C's preclusion arguments. Dkt. No. 13 at 11–13.

to provide guidance on issues presented in this case. For this reason, a stay of all proceedings furthers the orderly course of justice. Finally, Preston has not articulated any prejudice she will suffer if the case continues to be stayed pending resolution of the certified question. *See Kent v. Tech Mahindra (Americas) Inc.*, No. 24-CV-1168-BJR, 2024 WL 4994781, at *3 (W.D. Wash. Nov. 18, 2024); *Greenberg v. Amazon.com, Inc.*, No. C21-0898-RSL, 2023 WL 11893906, at *4 (W.D. Wash. Apr. 4, 2023); *Yim v. City of Seattle*, No. C18-0736-JCC, 2019 WL 13391374, at *1 (W.D. Wash. Apr. 5, 2019).

## III.  CONCLUSION

For the reasons laid out above, the Court GRANTS IN PART AND DEFERS IN PART SB&C's motion to dismiss and GRANTS the alternative request for certification. Dkt. No. 13. All of Preston's claims other than those based on Section 70.170.060(8)(a)'s notice requirement are DISMISSED, and the Court DEFERS ruling on the portion of Preston's claims involving Section 70.170.060(8)(a). With respect to the latter, the Court ORDERS as follows:

1. This Court CERTIFIES the following question of law to the Washington Supreme Court: Do the requirements of RCW 70.170.060(8)(a) apply to a collection agency collecting on a hospital debt, as opposed to a hospital itself?

2. The Clerk of the Court is DIRECTED to submit to the Washington Supreme Court certified copies of this Order; a copy of the docket in this matter; and docket numbers 1-1, 13, 14, 18, 20. These records contain the matters in the pending case deemed material for consideration of the certified question.

3. If the Washington Supreme Court accepts review of the certified question, this Court designates SB&C to file the first brief. *See* Wash. R. App. P. 16.16(e)(1). The parties are referred to Washington Rule of Appellate Procedure 16.16 for additional information regarding procedures upon review of the certified question.

4. Further proceedings in this Court are STAYED pending the Washington Supreme Court's decision on whether it will accept review. If the Court accepts review, the proceedings will remain stayed pending receipt of the answer to the certified question. *See* Wash. R. App. P. 16.16(g). The parties shall file a joint status report no later than fourteen (14) days after the earliest of the Washington Supreme Court either declining review or answering the certified question. The Court will address whether Preston will be granted leave to amend her complaint after it rules on the deferred portion of SB&C's motion to dismiss. If the Washington Supreme Court's disposition of the certified question does not moot the Court's order for Preston to show cause why a portion of her request for relief should not be stricken, the Court will set a deadline for Preston to respond to the show cause order after receipt of the parties' joint status report.

Dated this 12th day of May, 2025.

Lauren King
United States District Judge